Three States Lumber Company v. Commissioner.
Three States Lumber Co. v. Commissioner
Docket No. 5588.
United States Tax Court
1945 Tax Ct. Memo LEXIS 64; 4 T.C.M. (CCH) 955; T.C.M. (RIA) 45311; October 11, 1945
W. A. Giffen, Esq., 11 S. La Salle St., Chicago, Ill., for the petitioner. Carroll Walker, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency in excess profits tax for the calendar year 1941 in the amount of $10,939.35 and a penalty of $2,734.84 for failure to file a return. The petitioner contends that the Commissioner erred in holding that gains of $86,813.03, realized by the petitioner during the taxable year, constituted ordinary income subject to excess profits tax instead of gains from sales of capital assets held for more than 18 months which are expressly *65 excluded from excess profits tax, and in determining that a penalty was due for failure to file an excess profits tax return. Findings of Fact The petitioner was organized as a corporation in 1893 under the laws of Wisconsin to engage in the business of manufacturing lumber. It filed its income tax return for 1941 with the collector of internal revenue for the first district of Illinois. It did not file any excess profits tax return for that year. The petitioner acquired many acres of timberlands in Mississippi County, Arkansas, the last in 1914. The petitioner cut the timber from these lands and manufactured it into lumber. The business of cutting the timber and manufacturing it into lumber was completed in 1919. Within a few years thereafter, the petitioner disposed of its mill, equipment, and remaining supply of lumber. It owned about 17,000 acres of land from which the merchantable timber had been cut. About 4,000 acres of this land was under cultivation. The remainder of it had never been cleared. Much of the latter was wet for a good part of the time and practically all of it was covered with second growth timber, stumps, and thick underbrush. The petitioner desired to *66 sell all of its land. It was unable to sell the land in large blocks. It employed a man in 1922 to take charge of and sell this land. He gave all of his time until 1929 and thereafter one-half, to this work. The petitioner also employed to assist this man, a bookkeeper-stenographer and another man who spent most of his time in the office on the property, but who spent some of his time in showing the land to prospective purchasers. They gave full time until after 1935. It employed no others. It paid no commissions. The petitioner spent some money in 1923 for advertising the land in local papers and farm journals and in putting up posters on the land itself. The petitioner did not clear any of the land for sale or make any improvements thereon. The land was benefited from time to time by drainage ditches of various drainage districts and by some new public roads which were built. The petitioner surveyed tracks wherever necessary to establish boundaries in connection with sales. The petitioner frequently loaned money, for the purchase of equipment and the planting of crops, to the people with whom it had contracted for the lease or sale of land. The petitioner held out the land for sale *67 to any white persons who cared to purchase any amount of land consisting of 10 or more acres. Some of the land was leased with an option to purchase. Parcels of the land ranging in size from 10 to 3,200 acres were sold from time to time. All of the land had been disposed of or placed under contracts of sale by the close of 1935. Most of the land sold after 1931, was sold on installment contracts under which the purchaser would be allowed a few years in which to clear the land and get it under cultivation and then would be required to pay to the petitioner a specified number of bales of cotton for a period of years. The petitioner received a number of bales of cotton during 1941 on installment sales of land made prior to 1936. Its income for 1941 computed from these sales on an installment basis amounted to $86,813.03. It concedes that it had, aside from this, ordinary income of $12,994.72. $99,807.75, the total of the two amounts just mentioned, was reported by the petitioner on its income tax return as long-term capital gains. It did not file any excess profits tax return for 1941. The Commissioner, in determining the deficiency, has treated the entire amount of $99,807.75 as *68 ordinary income for excess profits tax purposes. He has also determined that the petitioner is liable for a penalty of 25 per cent of the deficiency under section 291 for failure to file an excess profits tax return. The petitioner, after having completed its lumbering operations on the property here in question, was engaged in the business of selling its lands in order to terminate its activities. The profits, which the petitioner realized in 1941, were realized from the sale of land which the petitioner was holding primarily for sale to customers in the ordinary course of its trade or business. The petitioner's failure to file an excess profits tax return for 1941 was due to reasonable cause and was not due to willful neglect. Opinion MURDOCK, Judge: Section 711 (a) (1) (B) provides that long-term capital gains shall be excluded from excess profits net income. Section 117 (a) (4) defines long-term capital gain as the gain from the sale or exchange of a capital asset held for more than 18 months to the extent that the gain was taken into account in computing net income. The gains here in question were taken into account in computing net income and the facts show that the land *69 was held by the petitioner for more than 18 months. The petitioner contends that the lands here in question were originally acquired primarily for use in connection with its lumber business, the original purpose continued to be the primary purpose until they were disposed of in connection with the orderly liquidation of its assets, and certainly, the primary purpose for which they were held was not for sale to customers in the ordinary course of any business carried on by the petitioner. It is obvious that the petitioner acquired the land primarily for the purpose of cutting the timber, manufacturing it into lumber and selling the lumber. But it completed that phase of its activities prior to 1920. It then had on its hands about 17,000 acres of land for which it had no further purpose and which it wanted to dispose of as profitably as it could. This situation might have been anticipated when the lands were purchased. It had no desire to go into the business of buying and selling real estate as a continuing operation and it did not go into any such business. It merely desired to sell the lands which it had on hand. The sale of its lands was, in a sense, a process of liquidation but *70 it was carried on in such a way as to constitute a business. Its primary purpose in holding the lands after 1922 was to sell them. It advertised the lands for sale and for years employed people who were engaged exclusively in selling the land to purchasers. It had a regularly established place of business on the lands. It sold 17,000 acres in many sales of small tracts. Thus, the petitioner was engaged for many years in the business of selling these cut-over lands which formed the remnant of its original lumbering business. Property held by a taxpayer primarily for sale to customers in the ordinary course of its business within the conception of the definition of capital assets is not limited to property purchased by the taxpayer primarily for the purpose of resale but may include property which was purchased for an entirely different purpose. , affirming . It does not make any difference in this connection that the taxpayer's motive in selling the property is to liquidate his investment. , certiorari denied , reversing *71 . . We conclude that the petitioner held its property primarily for sale to customers in the ordinary course of its business and that that property was not a capital asset within the meaning of section 117 (a) (1). The petitioner never filed any excess profits tax return for 1941. Counsel for the respondent contends that in such case the imposition of the 25 per cent addition to the tax provided in section 291 is mandatory and can not be avoided by a showing that failure to file was due to reasonable cause and not a willful neglect. He is in error in this contention. He must be thinking about section 291 as it appeared in the Revenue Act of 1934. A change was made in this provision in the Revenue Act of 1936, which has been preserved in all subsequent acts, under which a showing that the failure to file was due to reasonable cause and not to willful neglect will avoid the penalty even though no return has ever been filed. ; Law of Federal Income Taxation, Mertens, section 55.21 and footnote 63. He does not make any contention that the failure *72 to file was due to willful neglect or that there was not reasonable cause for it. The evidence shows that the petitioner consulted its tax advisors on this subject and failure to file was due to an honest belief, arrived at after such consultation, that the land was a capital asset and the petitioner had no ordinary income subject to excess profits tax. No excess profits tax return is required where there is no income subject to excess profits tax. The 25 per cent addition is not proper under such circumstances. . Decision will be entered for the respondent on the deficiency and for the petitioner on the penalty.